**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**
**IN ADMIRALTY**

| | | |
|---|---|---|
| EVRIDIKI NAVIGATION, INC., et al., | * | |
| Plaintiffs, | * | |
| v. | * | |
| THE SANKO STEAMSHIP CO., LTD., | * | |
| Defendant, | * | |
| * * * * * * * * * * * * * | * | Civil Action No. JKB-12-CV-1382 |
| KNIGHTSBRIDGE TANKERS LIMITED, | * | |
| Intervening Plaintiff, | * | |
| v. | * | |
| THE SANKO STEAMSHIP CO., LTD. | * | |
| Defendant, | * | |
| * * * * * * * * * * * * | * | |
| WESTERN BULK CARRIERS AS, | * | |
| Intervening Plaintiff, | * | |
| v. | * | |
| MV SANKO MINERAL, her engines, equipment, tackle appurtenances, etc., *in rem*, | * | |
| | * | |
| Defendant. | * | |

```
*   *   *   *   *   *   *   *   *   *   *   *   *        *

THYSSENKRUPP MATERIALS NA, INC.,                        *

              Intervening Plaintiff,                   *

v.                                                     *

MV SANKO MINERAL, her engines,                         *
equipment, tackle appurtenances, etc., in rem,
and WESTEN BULK CARRIERS AS,                           *

              Defendants.                              *

*   *   *   *   *   *   *   *   *   *   *   *   *        *

GLENCORE, LTD.,                                        *

              Intervening Plaintiff,                   *

v.                                                     *

M/V SANKO MINERAL, her engines,                        *
equipment, tackle appurtenances, etc., in rem,         *

              Defendant                                *

*   *   *   *   *   *   *   *   *   *   *   *   *        *

THE BANK OF TOKYO-MITSUBISHI UFJ,                       *
LTD.,
                                                       *
              Intervening Plaintiff,
                                                       *
v.
                                                       *
M/V SANKO MINERAL, her engines,                        *
equipment, tackle appurtenances, etc., in rem,
                                                       *
              Defendant.                               *        *   *   *   *   *   *   *   *   *

*   *   *   *   *   *   *   *   *   *   *   *   *
```

## THE BANK OF TOKYO-MITSUBISHI UFJ, LTD.'S VERIFIED INTERVENING COMPLAINT

Intervening Plaintiff The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("Bank"), by its attorneys of record, Holland & Knight LLP, files this Verified Intervening Complaint and alleges as follows:

## JURISDICTION AND VENUE

1.     This is a case of admiralty and maritime jurisdiction. This Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and 46 U.S.C. § 31301 *et seq.* This Complaint in Intervention states an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is brought pursuant to the Supplemental Rule for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions ("Rule") C.

2.     Venue is proper in the District of Maryland because the M/V Sanko Mineral (the "Vessel") is present in this District.

## THE PARTIES

3.     At all material times, the Bank was and is a corporation incorporated under the laws of Japan, acting through its head office in Tokyo located at 2-7-1, Marunouchi, Chiyoda-ku, Tokyo, Japan.

4.     The Vessel M/V Sanko Mineral, IMO Number 9355513, is a vessel registered under the Japanese flag and is presently under attachment and arrest in this District and within the jurisdiction of this Honorable Court.

5.     Upon information and belief, The Sanko Steamship Co., Ltd. ("Sanko" or "Owner") is a company incorporated under the laws of Japan whose registered office is at 2-3, Uchisaiwaicho 2 - Chome, Chiyoda-ku, Tokyo, Japan. Sanko is the registered owner of the

Vessel and has appeared in the District of Maryland in this action. Sanko has also filed a Verified Claim of Owner pursuant to Rule C(6)(a). (Doc. 27.)

## THE UNDERLYING ACTIONS AND PROCEDEDINGS

6.     Various alleged creditors of Sanko have filed attachment and arrest claims under Rules B and C in this action pursuant to which the Vessel was first attached on May 7, 2012 in Baltimore, Maryland.

7.     On May 7, 2012, Cobelfret Bulk Carriers N.V. ("Cobelfret") filed a Verified Complaint against Sanko for an alleged breach of a charter party and requested the Court issue Process of Maritime Attachment and Garnishment Pursuant to Rule B. 1:12-cv-01381 (WDQ), Doc. #1. This claim was voluntarily dismissed by Cobelfret on May 15, 2012 (Doc. #17) and all property attached in the action was released. (Doc. #22.)

8.     On the same day, May 7, 2012, Evridiki Navigation Inc., Orpheas Navigation Inc. and Pauline Shipping Limited, (together, the "Liquimar Plaintiffs") filed a Verified Complaint against Sanko for alleged breaches of maritime contracts, i.e., three charter parties, and to seek security for their claims which may be the subject of arbitration proceedings pursuant to the provisions under each charter party. (Doc. #1.) The Liquimar Plaintiffs subsequently amended their complaint on two occasions. (Docs. ## 14 and 49.)

9.     Pursuant to an order of the Court dated May 7, 2012 authorizing issuance of a writ of maritime attachment and garnishment pursuant to Rule B, the U.S. Marshal for the District of Maryland executed a writ of attachment and garnishment on the Vessel on May 9, 2012. (Docs. ## 6 and 7.)

10.     On May 18, 2012, Knightsbridge Tankers Limited ("KTL") filed a Verified Intervening Complaint against Sanko for an alleged breach of charter party and for writ of

4

maritime attachment and garnishment against the Vessel under attachment in the District. (Doc. #16.) The Court allowed the intervention and attachment of the Vessel. (Doc. # 18.)

11.     On May 24, 2012, Western Bulk Carriers AS ("WBC") intervened pursuant to Rule C for an alleged breach of duty and breach of a charter party as a result of Sanko's failure to deliver WBC's cargo to New Orleans and Houston, and seeking an order of the Court permitting the arrest of the Vessel and discharge of the cargo for purposes of transshipment. (Doc. #21.) The Court allowed the intervention and arrest of the Vessel. (Docs. ## 23 and 24.)

12.     On June 5, 2012, ThyssenKrupp Materials NA, Inc. ("ThyssenKrupp") sought to intervene and assert claims against the Vessel and WBC for an alleged breach of bills of lading and charter for failure to deliver the cargo to New Orleans. ThyssenKrupp sought to secure its claim pursuant to Rule C as to the Vessel and Rule B as to WBC's property on board the Vessel. (Doc. #40.) The Court allowed the intervention as well as the arrest and attachment. (Doc. # 67.)

13.     On June 12, 2012, Glencore, Ltd. ("Glencore") intervened pursuant to Rule C seeking an order of arrest of the Vessel as to its claim for the alleged failure to deliver Glencore's cargo. (Doc. #56.) The Court allowed the intervention and the arrest of the Vessel. (Doc. # 67.)

14.     As a result of the above complaints, the Vessel has remained attached and arrested within the District of Maryland since May 7, 2012.

15.     On May 30, 2012, WBC filed an emergency motion to vacate the Rule B attachments asserted by the Liquimar Plaintiffs and KTL, asserting, *inter alia*, that based on the expected value of the Vessel, the anticipated claims at issue and the relative priority of those claims, the attachments should be deemed futile under the maritime lien priority rules. (Doc. #32, ¶ 12.)

5

16.     Pursuant to Supplemental Rule E(4)(f) and Local Admiralty Rule (e)(8), WBC requested that the Court hold a prompt hearing to determine wither the Rule B attachments against the Vessel should be vacated.

17.     At a hearing held on June 13, 2012, this Court ordered that an evidentiary hearing be set for Thursday, June 21, 2012,  before Chief Magistrate Judge Grimm with respect to the question of whether the Rule B attachments of the Vessel are futile.  (Doc. # 67, ¶ 6.  )

18.     Specifically, the Court ordered that the hearing resolve, among other issues, the following factual dispute: the value and validity of any first mortgage on the Vessel.  (Doc. # 67, ¶ 6(c)(ii).)

## BACKGROUND FACTS

19.     Pursuant to a written agreement dated June 16, 2008 (the "Loan Agreement") between the Bank and the Owner, the Bank agreed to and did lend to the Owner the principal sum of ¥1,880,000,000.00 (the "Loan") on the terms and conditions set out in the Loan Agreement.  Certain other agreements between the Bank and the Owner, dated March 22, 2006, and June 20, 2008 respectively, are also part of this loan transaction.

20.     As of May 8, 2012 and continuing to today, the principal loan balance under the Loan Agreement is ¥1,222,000,000.00.

21.     All amounts due and owing under the Loan Agreement are secured by a first preferred ship mortgage on the Vessel dated June 20, 2008 (the "Mortgage") granted by the Owner, as mortgagor, in favor of the Bank, as mortgagee.

22.     The Mortgage was duly and validly executed on June 20, 2008, and was recorded with the Registry of Ships, Tokyo on June 20, 2008.  A true and correct copy of a Vessel

6

Registry Certificate dated May 10, 2012 showing the recording of the Mortgage is attached hereto as Exhibit 1.[1]

23.     The Mortgage constitutes a valid and perfected foreign preferred mortgage on the Vessel within the meaning of 46 U.S.C. §§ 31301(6) and 31322 *et seq.*

24.     Pursuant to the terms of the Loan Agreement and Mortgage, the Bank is entitled to enforce the terms of the Mortgage if any one or more events as defined in the Article 9.01(a), (b) or (c) of the Loan Agreement, among "Event(s) of Default" as defined in Article 9.01 of the Loan Agreement, occurs.

25.     The attachment and arrest of the Vessel pursuant to the Orders of this Court is an "Event of Default" as defined by Article 9.01(c) of the Loan Agreement.

26.     In accordance with the terms of the Loan Agreement and the Mortgage, on the date the Vessel was attached in this jurisdiction (May 7, 2012 in Baltimore, and May 8, 2012 in Japan), the loan was accelerated and penalty interest (14% per annum) commenced to run.

27.     In accordance with the terms of the Loan Agreement and by its incorporation in the Mortgage, on the occurrence of an event as defined in Article 9.01(a), (b) or (c) among Events of Default all monies payable pursuant to the Loan Agreement and other agreements concerning the loan will immediately come due, and the Bank may demand such payment from the Owner, without the requirement of any notice.

28.     As of June 6, 2012, the amount due the Bank under the Loan Agreement and Mortgage totals ¥1,236,776,110.00 or US$15,927,573.86 using the Telegraphic Transfer Buying (TTB) rate as of June 6, 2012. (Declaration of Eiichi Kashikura, Doc. #45, ¶¶ 7-8.)

---

[1] Pursuant to Federal Rule of Civil Procedure 44.1, the Bank hereby gives notice of its intent to rely on foreign law, i.e., Japanese law, as to the issue of the validity of the Mortgage pursuant to 46 U.S.C. §31301(6)(B).

29.     This amount does not include other expenses which are also or may be due under the Loan Agreement and Mortgage, including but not limited to, attorneys' fees.

30.     The Bank expressly reserves all of its rights and remedies under the Loan Agreement and/or the Mortgage and/or at law including, but not limited to, (a) declaring any other breaches and/or "Defaults" and/or "Events of Default," as defined by the Loan Agreement and/or Mortgage, that have occurred or may otherwise occur in the future, none of which are regarded as waived and (b) exercising any and all such powers, rights and remedies under the Loan Agreement and/or Mortgage and/or at law.

31.     Further, the Bank expressly reserves all its rights under the Loan Agreement and/or the Mortgage and/or at law to assert that any delay in exercising any such powers, rights and remedies under the Loan Agreement and/or the Mortgage and/or at law will not serve as a waiver, variation, suspension or limitation of such powers, rights and remedies or otherwise prejudice such powers, rights and remedies and shall not preclude (permanently or temporarily) the enforcement or, reliance on or exercise of such powers, rights and remedies at any time.

32.     The Bank expressly reserves the right to amend this Intervening Complaint to allege additional amounts due and owing under the terms of the Loan Agreement and/or the Mortgage and/or at law at any time.

## THE BANK'S ACTION AGAINST M/V SANKO MINERAL PURSUANT TO ITS PREFERRED MORTGAGE LIEN

33.     The Bank sues the Vessel, *in rem*, pursuant to Supplemental Rule C and 46 U.S.C. § 31325(a) and (b) and repeats and realleges by reference the allegations contained in paragraphs 1-32 as if specifically set forth herein.

34.     In consideration of a loan of ¥1,880,000,000.00, Sanko executed the Loan Agreement whereby it became indebted to the Bank in the initial principal amount of ¥1,880,000,000.00 (the current principal amount being ¥1,222,000,000 (US$15,927,573.86)) together with interest due as stated above.

35.     The Loan is secured by a Mortgage, naming the Bank as the mortgagee. The Mortgage was duly and validly executed on June 20, 2008.  Ex. 1.

36.     On May 7, 2012 the Vessel was attached in this jurisdiction and therefore an event as defined in Article 9.01(c) among "Events of Default," as defined in the Loan Agreement, occurred and Sanko is in default of the Mortgage.

37.     As a result of the aforesaid default under the Loan Agreement and the Mortgage, the Bank is entitled to assert and foreclose its preferred mortgage lien on the Vessel within the meaning of the laws of 46 U.S.C. §§ 31301(6) and 31322 *et seq.* and recover any deficiency from Sanko.

38.     Prior to commencement of this action, all acts and things required to be done were accomplished in order to constitute the Mortgage as a valid and perfected foreign preferred ship mortgage on the Vessel within the meaning of 46 U.S.C. §§ 31301(6)(B) and 31322 *et seq.*

**PRAYER**

**WHEREFORE**, the Bank prays:

1.     That the Mortgage executed by the Owner be declared to be a valid and subsisting mortgage lien upon the Vessel, her engines, tackle, apparel, etc., and all other equipment and necessaries belonging and appurtenant thereto, which to the extent permitted by applicable law is

9

prior and superior to the interest, liens or claims of any and all persons, firms or corporations whatsoever;

2.      That the quantum of the balance due under Mortgage executed by the Owner may be declared to be at least US$15,927,573.86 as of June 6, 2012;

3.      That upon the motion of the Bank,[2] a Warrant of Arrest, and other similar process of maritime attachment and garnishment which might later be deemed appropriate, in due form of law, according to the course and practice of this Honorable Court in causes of admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, may issue against the Vessel and her engines, tackle, apparel, etc., and all other necessaries and equipment belonging and appurtenant thereto, as provided in Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule C, and that all persons claiming any interest in the Vessel may be cited to appear and answer the matters aforesaid, and that the Vessel, her engines, tackle, apparel, etc., and all other necessaries belonging and appurtenant thereto, may be seized, condemned and sold to pay the demands and claims aforesaid, with interest, costs and attorneys' fees and to pay any other amounts advanced by the Intervening Plaintiff or required to be paid by the Owner to the Bank under the Loan Agreement, the Mortgage and any other agreements related thereto, together with interest, costs and attorneys' fees; and,

4.      That the Bank have such other and further relief as in law and justice it may be entitled to recover.

---

[2] The Bank is well aware of its right to seek the immediate arrest of the Vessel and move for its interlocutory sale in order to foreclose the Mortgage and the Bank expressly reserves the right to do so if and when necessary. However, given the current posture of the case, the Bank has refrained from taking such actions at this time. In that regard, the Bank refers to this Court's Orders (Docs. ## 66 and 67), by which an evidentiary hearing has been set to commence on June 21, 2012 to address certain specified topics, including the validity of and quantum due under the Mortgage. If as a result of that hearing, the KTL and Liquimar Plaintiffs attachments are vacated, the Bank's action herein may well be rendered moot. On the other hand, if the attachments (or the arrests obtained by WBC, ThyssenKrupp and Glencore or others) remain in place, then the Bank will be required to take appropriate action.

Dated: June 19, 2012

HOLLAND & KNIGHT LLP

_____/s/_____

Philip T. Evans (FBN 11796)
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006
(202) 457-7043
(202) 955-5564 (fax)
philip.evans@hklaw.com


- and -

HOLLAND & KNIGHT LLP

_____/s/_____

James H. Hohenstein, *pro hac vice*
Brad L. Berman, *pro hac vice*
31 West 52nd St.
New York, NY 10019
(212) 513-3213
(212) 385-9010 (fax)
james.hohenstein@hklaw.com
brad.berman@hklaw.com

## VERIFICATION

I, Philip T. Evans, am a member of the Bar of this Court and a partner of the firm of Holland & Knight, attorneys for Intervening Plaintiff, who does not have an officer in this jurisdiction. I verify that I have read the foregoing Verified Intervening Complaint and know the contents thereof, and affirm that the facts alleged in the foregoing Verified Intervening Complaint are true and correct to the best of my knowledge and information based upon the records of Intervening Plaintiff made available to me by Intervening Plaintiff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of June 2012.

_____
Philip T. Evans

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of June 2012, I caused a copy of the forgoing

Motion to Intervene and proposed Order, Verified Intervening Complaint, and other related

documents to be filed via the Court's CM/ECF system for service on all counsel of record.


_____/s/_____
Philip T. Evans

#11302044_v2