**IN THE UNITED STATES DISTRICT COURT
<u>FOR THE DISTRICT OF MARYLAND</u>
NORTHERN DIVISION
IN ADMIRALTY**

| | | |
|---|---|---|
| EVRIDIKI NAVIGATION, INC., et al | * | |
| Plaintiffs, | * | |
| v. | * | |
| -against- | * | |
| THE SANKO STEAMSHIP CO., LTD. | * | |
| Defendant, | * | |
| *   *   *   *   *   *   *   * | | CIVIL ACTION NO. : |
| WESTERN BULK CARRIERS AS | * | JKB-12-CV-1382 |
| Intervening Plaintiff, | * | |
| v. | * | |
| M/V SANKO MINERAL, her engines, equipment tackle, appurtenances, etc., *in rem*, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| *   *   *   *   *   *   *   * | | |
| THYSSENKRUPP MATERIALS NA, INC. | * | |
| Intervening Plaintiff, | * | |
| v. | * | |
| M/V SANKO MINERAL, her engines, equipment tackle, appurtenances, etc., *in rem*, and WESTERN BULK CARRIERS AS | * | |

## MEMORANDUM OF LAW IN SUPPORT OF PRIORITY OF THE CLAIM OF THYSSENKRUPP MATERIALS NA, INC.

ThyssenKrupp Materials NA, Inc., Intervening Plaintiff, (hereinafter "Thyssen") submits this memorandum to assert the priority of its claims against M/V Sanko Mineral *in rem* for deviation and financial unseaworthiness over the claims of Liquimar and Knightsbridge as these latter claims lack any maritime liens against the vessel, and over that of Bank of Tokyo Mitsubishi's ship mortgage claim. Thyssen's claim takes priority over the above claims as it's claim is considered a maritime tort and thus is afforded a higher position than contractual claims such as the ship mortgage and the claims for charter hire on other vessels. See 46 U.S.C. 31326.

Here the vessel is unable to deliver Thyssen's cargo to the intended ports of destination, Houston and New Orleans, by reason of its distressed financial condition, and it appears the cargo will be discharged in Baltimore causing extra expenses for discharge, transshipment and loss of value to the cargo. Such a deviation and financial collapse in mid-voyage constitute maritime tort liens against the vessel. As the 4th circuit has held in *Oriente Commercial v. M/v Floridian*, 1975 AMC 2484,

> "More recently it has been held that cargo

> claims such as those in the present case arise out of tort if the loss results from a lack of due diligence on the part of the carrier. Thus, in *Morrissey v. S.S.A. & J. Faith (N.D. Ohio, 1965), 1966 AMC 71, 252 F. Supp. 54,* the court concluded that the Carriage of Goods by Sea Act, *46 U.S. Code, secs. 1300-*1315, places a legal obligation, independent of contract, upon the carrier. While the court believed the duty of due diligence to be less burdensome to the carrier than that imposed in the *Breyer* case, either standard is met by the facts of this case. The cargo claimants having taken judgment on their allegations of negligence, have established a violation of the duty of due diligence and, *a fortiori,* of the much stricter obligations of common carriers. Accordingly, whichever standard is applied, it has been broken in this case, and the breach sounds in tort. *See also, Port Welcome Cruises, Inc. v. S.S. Bay Belle (D. Md., 1963), 1964 AMC 2674, 215 F. Supp. 72, 86, aff'd, 324 F.2d 954* (4 Cir., 1963) (failure to return rented property sounds in tort on conversion theory);...."

See also *Associated Metals v. Alexander's Unity* (5th Cir.) 1995 AMC 1006.

That deviation constitutes a maritime tort against a vessel is long established. See *Seguros Banvenz v. M/v Oliver Drescher* 1985 A.M.C. 2168 (2nd Cir.)

The failure of Sanko to have sufficient funds to finance the voyage is also clearly a maritime tort amounting to unseaworthiness.

As the Court held in *Morrisey v. S/S A. & J. Faith* 1966, A.M.C.71, 76, 77, 252 F. Supp. 54 (N.D. Ohio 1965)

> "Ordinarily, the investigation of the seaworthiness of a

vessel involves the evaluation of her physical fitness to perform the particular voyage and, in cargo cases, to carry, preserve and deliver the particular cargo. We think, however, that the term should not be limited to merely the physical facilities. The law imposes this obligation so that a ship's owner must make reasonable effort to furnish a vessel which can complete the voyage for which she solicits business. If, when the owner lures a shipper into entrusting cargo to the care of a ship and there is a multitude of unsatisfied creditors, any one of whom can arrest the vessel, and the owner lacks the resources to free her from the arrest of process -- either by satisfaction of the claims or the posting of a bond -- there can be no reasonable expectation that the vessel will perform the voyage. There is, on the contrary, a strong probability that the voyage will end as did the voyage of the *Faith.* If the term "seaworthiness" connotes simply a vessel fit to perform as she promises, and if the strong probability exists that her voyage will be interrupted by litigation, we hold that the vessel is unseaworthy at the start of her voyage. If the owner leaves the vessel unprotected against the foreseeable seizure by creditors she is just as liable to be stopped short of her destination as if she were left unprotected against the ordinary perils of navigation. The foreseeable result is the same: interruption or termination of the voyage. If the delay causes damage to the cargo or the forced sale of the vessel results in the loss of prepaid freights, as here, we hold that such an injury to the cargo and its owner gives rise to a claim for the breach of the carrier's duty imposed by section 3(1)(a) of COGSA, *46 U.S. Code, sec. 1303*(1)(a).

Our final determination is whether the breach of the common carrier's duty to furnish a seaworthy vessel gives rise to an action in tort or merely an action in contract. It is axiomatic that the relationship of a common carrier to a shipper and the carrier's attendant duties exist independently of the terms of a contract of affreightment or bill of lading. Wherever the law recognizes the necessity for imposing added

> safeguards around a consensual relationship in addition to the commitments endorsed by the parties (e.g. physician-patient, trustee-beneficiary, etc.), any disobedience of the law's added commands gives rise to an action *ex delicto*. Thus, the violation of a common carrier's duty, imposed by law to equate the bargaining power between carrier and shipper, sounds in tort. As stated by the Supreme Court in *John G. Stevens, 170 U.S. 113, 124 (1897):*
>
> "But even an action by * * * an owner of goods, against a carrier, for neglect to carry and deliver in safety, is an action for the breach of a duty imposed by the law, independently of contract or of consideration, and is therefore founded in tort." *Cf.* also *Penobscot, 1940 A.M.C. 1217, 1235* (D. Mass., 1940) (dictum); *Henry W. Breyer, 1927 A.M.C. 290, 17 F.(2d) 423* (D.C. Md., 1927). n5"

Thus Thyssen's claims here for damages due to geographical deviation and financial unseaworthiness causing financial loss due to extra discharge, transshipment costs, lost freight and depreciation in the value of the cargo are all maritime tort liens, preferred over the ship mortgage and the non-lien claims of Liquimar and Knightsbridge, and should be so declared as such by the Court.

Respectfully Submitted:

Dated: June 20, 2012

                                      /s/
                              Harold M. Kingsley (Entry Pro Hac Vice)
                              Kingsley & Kingsley
                              91 W. Cherry Street

                                          Hicksville, NY 11801-3852
                                          Telephone:  (516) 931-0064
                                          Facsimile:  (516) 931-4313

                                                   /s/
                                          James D. Skeen #00010
                                          Skeen & Kauffman, LLP
                                          911 N. Charles Street
                                          Baltimore, MD 21201
                                          Telephone:  (410) 625-2252
                                          Facsimile:  (410) 625-2292

                                          *Attorneys for Intervening Plaintiff*
                                          *ThyssenKrupp Materials NA, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of June, 2012 a copy of the foregoing Memorandum of Law in Support of Priority of the Claim of ThyssenKrupp Materials NA, Inc. was served via electronic filing and/or first class mail, postage prepaid, to: Geoffrey S. Tobias, Esquire, Caitlin Quinn Vandevander, Esquire, Ober Kaler Grimes & Shriver, A Professional Corporation, 100 Light Street, Baltimore, MD 21202; Jason W. Gaarder, Esquire, West and Gaarder, LLC  409 Washington Avenue Suite 1010, Baltimore, MD 21204; William R. Bennett, III, Esquire, Bennett Guiliano McDonnell and Perrone LLP, 494 Eighth Avenue 7th Floor New York, New York 10001; David W. Skeen, Esquire, Wright Constable & Skeen, 100 N. Charles Street, 16th Floor, Baltimore, MD 21201; Alexander M. Giles, Esquire, Semmes Bowen and Semmes PC, 25 S. Charles Street, Ste. 1400, Baltimore, MD 21201; Patrick F. Lennon, Esquire, Lennon Murphy Caulfield and Phillips LLC, 420 Lexington Avenue, Ste 300, New York, NY 10170; Phillip T. Evans, Esquire, Holland & Knight, LLP, 2099 Pennsylvania Ave., NW, Suite 100, Washington, DC 20006; James H. Hohenstein, Esquire, 31 West 52nd Street, New York, NY 10019

_____/s/_____
James D. Skeen